IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI‘I

| | |
|---|---|
| TYLER LEE LAHNUM, | CIVIL NO. 15-00336 DKW-RLP |
| Plaintiff, | **ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE** |
| vs. | |
| CAROLYN W. COLVIN, | |
| Defendant. | |

## ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

### INTRODUCTION

Plaintiff Tyler Lee Lahnum brings this action under 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security, Carolyn C. Colvin, which denied his application for disability insurance benefits based upon a finding that he was not disabled.   Lahnum asks this Court to review whether the Administrative Law Judge improperly substituted her opinion for that of medical experts, and adequately weighed Lahnum's credibility, as part of her assessment of Lahnum's residual functional capacity.   After carefully reviewing the record, the Court concludes that the ALJ correctly determined that Lahnum was not disabled at

1

Step 5 of the five-step sequential evaluation process.   Because the ALJ's decision

was supported by substantial evidence and was not legally erroneous, the Court

affirms the ALJ's December 29, 2014 decision.

## BACKGROUND

Lahnum worked as a painting supervisor for a construction contractor until

August 2010.   Administrative Record ("AR") 38, 56.   On January 17, 2013, he was

involved in a motor vehicle accident that fractured his L1vertebrae.   Following the

accident, Lahnum suffered from chronic back pain.   AR 375-78.   He applied for

Social Security Disability Insurance benefits on February 27, 2013.   AR 164-65.

SSA denied Lahnum's initial claim on October 10, 2013 and denied his

reconsideration request on February 8, 2014.   AR 65-99.

The ALJ convened a hearing on August 6, 2014, attended by Lahnum and his

attorney.   Also present at the hearing was vocational expert ("VE") Ron Fleck.

AR 32-64.   At the hearing, Lahnum testified that his daily activities included

watching television for four to five hours, playing games on his laptop, and visiting

with his mother a couple of times per week.   AR 40-43.   He testified he was able to

maintain his own personal hygiene and get dressed slowly, take out the garbage and

load the dishwasher, and microwave meals independently, but required assistance to

prepare a regular meal.   AR 40-41.   He also testified that he could not mop or

vacuum, but could use a stand-up broom on occasion.   AR 40-41.   Although
Lahnum told the ALJ that he was able to grocery shop with his live-in girlfriend
twice per month at Costco for a couple of hours, he needed to sit down on benches to
rest during those shopping trips.   AR 41-42.   He specified that he could stand for
ten to fifteen minutes, sit for a maximum of thirty minutes, and could not reach
overhead.   AR 45.   Lahnum further stated that he occasionally used a walker and
saw a family therapist weekly.   AR 46-47.

Lahnum tested positive for marijuana and methamphetamine in 2013, but
denied using either drug.   AR 47.   Lahnum testified that he was regularly taking
Sudafed for congestion, which he believed resulted in the positive
methamphetamine test, but could not explain the positive marijuana test.   AR
47-48, 54-55.   He opined that his doctor did not believe his explanation that
Sudafed caused the positive test.   AR 47-48.

The ALJ questioned Lahnum about his recreational activities, including
playing music, camping, and his then-recent attendance at a fishing tournament.
Lahnum testified that he had been on a boat in the ocean the weekend immediately
preceding the hearing, but had not personally done any fishing -- he was just "sitting
and hanging out on the boat" while watching his girlfriend fish   AR 48.   Moreover,
he claimed to have hurt his back while on the boat due to large wakes.   AR 48-49.

Lahnum also testified before the ALJ regarding his symptoms and complaints of pain.   Accordingly to Lahnum, he has "bad days" three or four days per week, when he would lay in bed until 12:00, 1:00, or 2:00 in the afternoon.   AR 52-53. He stated that he is unable to work due to low back pain, right upper extremity pain, and anxiety.   AR 52-53.

The ALJ denied Lahnum's disability benefits claim on December 29, 2014. AR 10-31.   This denial became the final decision of the Commissioner when the Appeals Council denied Lahnum's request for review on June 23, 2015.   AR. 1-6.[1] Lahnum filed his complaint seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g) on August 24, 2015.

In the December 29, 2014 decision, the ALJ employed the five-step sequential disability evaluation process to determine whether Lahnum was disabled within the meaning of the Social Security Act.   *See* 20 C.F.R. § 404.1520(a)(4).[2]

---

[1]Lahnum passed away on February 15, 2015.   AR 481.   His appeal asks the Court to find him disabled from January 17, 2013 to February 2, 2015.   Opening Br. at 5.
[2]The five steps of the inquiry are:

> 1.  Is the claimant presently working in a substantially gainful activity?   If so, then the claimant is not disabled within the meaning of the Social Security Act.   If not, proceed to Step 2.   20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2.  Is the claimant's impairment severe?   If so, proceed to Step 3.   If not, then the claimant is not disabled.   20 C.F.R. §§ 404.1520(c), 416.920(c).

At Step 1, the ALJ determined that Lahnum had not engaged in substantial gainful activity since January 17, 2013, the alleged onset date.   AR 15.   The ALJ concluded at Step 2 that his severe impairments included degenerative disc disease of the lumbar spine, anterior compression fracture of L1, drug abuse, generalized anxiety disorder and major depressive disorder.   His medically determinable impairments of hypertension, left groin lymph nodes, mild left tibial neuropathy, mild right tarsal tunnel syndrome, and left lumbosacral radiculopathy were determined to be nonsevere.   AR 15.   At Step 3, the ALJ concluded that Lahnum did not have an impairment or combination of impairments that meets or equals a

---

3.   Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?   If so, then the claimant is disabled.   If not, proceed to Step 4.   20 C.F.R. §§ 404.1520(d), 416.920(d).

4.   Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled.   If not, proceed to Step 5.   20 C.F.R. §§ 404.1520(e), 416.920(e).

5.   Is the claimant able to do any other work?   If so, then the claimant is not disabled.   If not, then the claimant is disabled.   20 C.F.R. §§ 404.1520(f), 416.920(f).

*See Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).   The claimant has the burden of proof for Steps 1 through 4, and the Commissioner has the burden of proof at Step 5.   *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

listed impairment at 20 C.F.R. Part 404, Subpart P, Appendix 1.[3]   AR 16-17.   Next, she determined at Step 4 that Lahnum was unable to perform past relevant work. AR 24.   The ALJ adopted the VE's findings and determined that Lahnum had the residual functional capacity ("RFC") to perform work as a telemarketer, service dispatcher, or gate guard.   AR 25.   Because the ALJ found Lahnum capable of making a successful adjustment to other work that exists in significant numbers in the national economy, she concluded that he was not disabled at Step 5.   AR 25-26.

Lahnum accepts the ALJ's findings at Steps 1, 2, 3, and 4.   Opening Br. at 5. On appeal, Lahnum contends that the ALJ committed legal error in determining his RFC by (1) substituting her medical opinions for those of treating and evaluating physicians; and (2) finding Lahnum to be less than credible based in part on events that occurred prior to the date he claimed to be disabled.[4]   Lahnum asks the Court to

---

[3]Between Step 3 and Step 4, the ALJ determines a claimant's residual functional capacity, *see* 20 C.F.R. § 404.1520(e), which is what he or she can still do despite existing exertional and nonexertional limitations.   *Smolen v. Chater*, 80 F.3d 1273, 1291 (9th Cir. 1996) (citing 20 C.F.R. § 404.1545(a) (1991)).   The ALJ found Lahnum could perform "light" work as defined in 20 C.F.R. § 404.1567(b), concentrate for two-hour blocks of time to complete a normal workday, interact and respond appropriately to coworkers, and perform detailed and complex tasks.   AR 17-18.

[4]Lahnum raised an additional issue in his Opening Brief – that the ALJ improperly limited him to unskilled work.   *See* Opening Br. at 9-10.   That argument, however, was conceded on Reply, and the Court has therefore not considered it further.   Reply at 1.

reverse the final decision of the ALJ that he was not disabled and remand for a new administrative hearing.

## STANDARD OF REVIEW

Under the Social Security Act, 42 U.S.C. § 405(g) (the "Act"), "[t]he district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012); *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (citation omitted).

"Even though findings might be supported by substantial evidence, the correct legal standard must be applied in making a determination of disability." *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002) (citation omitted). In other words, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Benitez v. Califano,*

7

573 F.2d 653, 655 (9th Cir. 1978) (quoting *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

## DISCUSSION

Lahnum argues that the ALJ made two errors in determining his RFC: first, by substituting her lay opinion for that of medical experts; and, second, by not explaining with sufficient clarity the reasons why she questioned Lahnum's credibility.   Opening Br. at 10.   In neither case did the ALJ err.

In evaluating a claimant's RFC, the ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain and symptoms is credible.   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).   "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*)).   Second, if a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.   *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

Here, the ALJ's decisions at both steps of the credibility analysis were supported by substantial evidence and free of legal error, as addressed more fully below.

## I.    The ALJ Did Not Err By Improperly Substituting Her Lay Opinion for that of the Medical Experts

Lahnum argues that the ALJ incorrectly rejected the opinions of examining and treating physicians when she determined that Lahnum's subjective complaints were out of proportion to the objective evidence.   More specifically, the ALJ concluded that the medical opinions of Lahnum's primary care physician, Dr. William Lawrence, and the internal medicine consultative evaluator, Dr. Antoine Cazin, were entitled to little weight.   *See* AR 22-24.   Lahnum argues that the ALJ "does not have the medical training to make the conclusion that she did."   Opening Br. at 13.

If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is.   *See Regennitter v. Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1298-99 (9th Cir. 1999); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988).   Generally, the opinion of a non-examining medical source is given less weight than the opinion of a treating or

examining doctor.   *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995).   Even so, an ALJ may not ignore these sources and must explain the weight given to the opinion.   *See* SSR 96-6p, 1996 WL 374180, at *2.   *See also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians.   [20 C.F.R.] § 404.1527(d)(1)-(2).   Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and '[o]ther factors' such as the degree of understanding a physician has of the Administration's 'disability programs and their evidentiary requirements' and the degree of his or her familiarity with other information in the case record.   *Id*. § 404.1527(d)(3)-(6).").

The ALJ need not accept the opinion of any physician, including a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."   *Thomas v. Barnhart*, 278 F.3d 941, 957 (9th Cir. 2002); *accord Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).   The

ALJ is also responsible for resolving conflicts in the medical record.   *Benton v.*

*Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).[5]

Lahnum asserts that the ALJ substituted her opinion for that of the physicians

when she determined that his subjective complaints were out of proportion to the

objective evidence.   Lahnum first points to a July 10, 2014 medical questionnaire

completed by his treating physician, Dr. Lawrence, which noted a December 16,

2013 MRI as an objective finding supporting Lahnum's subjective complaints.

AR. 478.   The ALJ gave "little weight" to Dr. Lawrence's opinion, *see* AR 22, for

the following specific and legitimate reasons:

> Dr. Lawrence is not an orthopedic or neurological specialist.
> Rather, he is the claimant's primary care doctor.   Furthermore,
> his opinion is not consistent with his own treatment notes, which
> do not reflect any significant clinical findings.   In addition, Dr.
> Lawrence's opinion is inconsistent with the findings from the
> neurological examination, which showed that the claimant's
> condition was stable.   Moreover, the checklist-style form used
> by Dr. Lawrence appears to have been completed as an
> accommodation to the claimant and includes only conclusions
> regarding functional limitations without any rationale for those
> conclusions.   Accordingly, the undersigned finds that this

---

[5]Those physicians with the most significant clinical relationship with the claimant are generally
entitled to more weight than those physicians with lesser relationships.   *Lester*, 81 F.3d at 830; 20
C.F.R. §§ 404.1527(d), 416.927(d).   As such, the ALJ may only reject a treating or examining
physician's uncontradicted medical opinion based on "clear and convincing reasons."   *Lester*, 81
F.3d at 830-31.   Where such an opinion is contradicted, however, it may be rejected for "specific
and legitimate reasons that are supported by substantial evidence in the record."   *Id*.

evidence has no probative value because any evidence does not
support it.

AR 22 (exhibit citations omitted).[6]   The ALJ did not err by affording "little weight"

to the opinion of Lahnum's primary care physician where, as here, that opinion was

"brief, conclusory, and inadequately supported by clinical findings."   *Thomas*, 278

F.3d at 957; *see also Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ

permissibly rejected psychological evaluations "because they were check-off reports

that did not contain any explanation of the bases of their conclusions"); *De Guzman*

*v. Astrue*, 343 F. App'x 201, 209 (9th Cir. 2009) (ALJ was "free to reject" doctor's

check-off report that did not explain basis for conclusions); *Hernandez v. Colvin*,

2014 WL 1800408, at *9-10 (C.D. Cal. May 6, 2014) (ALJ reasonably accorded

little weight to medical examiner's RFC where "assessments were brief and

conclusory, consisting merely of checkmarks and brief responses, with no clinical or

diagnostic evidence noted to support her findings.").

Lahnum also specifically objects to the ALJ affording "little weight" to the

opinion of Dr. Cazin, a non-treating physician who evaluated Lahnum on October 3,

---

[6]The ALJ also addressed the results of this MRI in her discussion of neurosurgeon Leon Liem's
evaluation of Lahnum.   *See* AR 21 ("The study showed more kyphosis compared to the prior MRI
in January of 2013, but the claimant's grade I spondylolisthesis was stable.   Based on this
examination, Dr. Liem opined the claimant's burst fracture was stable for the past eight months
and therefore surgical intervention was not recommended.").

2013.   AR 350.   Dr. Cazin indicated that Lahnum was limited in his ability to do work-related activities, such as walking, standing, lifting or carrying.   AR 355. The ALJ found this opinion unduly restrictive in light of the objective findings in Dr. Cazin's examination.   She concluded that Dr. Cazin's "opinion is not consistent with the claimant's activities of daily living," and that "Dr. Cazin's opinion is not consistent with the record as a whole."   AR 23.   The ALJ observed a reason for this inconsistency: "Dr. Cazin did not have the benefit of reviewing the medical record in its entirety, including the findings from [the neurosurgeon, Dr. Liem's] examination and subsequent diagnostic testing."   AR 23.   This finding is notable because Dr. Cazin himself remarked upon the significance of Lahnum's failure to see a neurologist at the time of Dr. Cazin's examination in October 2013, and the incongruence between his professed symptoms, the lack of neurologic deficit, and failure to seek treatment:

> Clinically the patient's condition appears to be moderate in severity.   There is no neurologic deficit.   However, he complains of severe pain.   He was supposed to see a neurologist, however, he did not see any so far.

AR 355.   In other words, Dr. Cazin's own observations expressed some reservation regarding Lahnum's subjective complaints of pain, reservations shared by, not in conflict with, the ALJ.   *Cf. Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

(ALJ did not err by rejecting a doctor's recommendations as being implausible and inconsistent with the claimant's testimony about daily activities); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (permitting the rejection of a medical opinion that is inconsistent with clinical findings).

Dr. Cazin's skepticism, both noted and adopted by the ALJ, was borne out when Lahnum finally submitted to the neurologic exam that Dr. Cazin had observed was absent at the time of his examination. Dr. Liem, a neurosurgeon, evaluated Lahnum for low back pain on December 26, 2013. According to Dr. Liem, Lahnum's spinal injury had been stable since his accident ("stable grade I spondylolisthesis L4-L5"). AR 378. Because the injury had been "stable for 8 months," Dr. Liem did "not recommend surgical intervention." *Id.* Moreover, Dr. Liem found notable that Lahnum did not utilize, or even seek out, treatments, such as physical therapy, acupuncture, or chiropractic care, to address his subjective pain. Instead, Lahnum relied on marijuana. AR 375. Based, in part, then on Dr. Liem's medical evaluation, the ALJ appropriately concluded that Lahnum's back condition was stable, had been stable for some time, and that Lahnum's subjective complaints were out of proportion to the objective evidence. AR 21-22.

Lahnum points to the fact that he eventually did have back surgery on January 28, 2015 – after the ALJ's December 29, 2014 decision issued – as evidence that

"fits within the realm of the treatment the ALJ suggested would be what one would expect for a totally disabled individual."   Opening Br. at 14.   The fact that Lahnum had surgery in January 2015 does not negate or cast doubt upon the ALJ's prior credibility finding and analysis of the objective medical evidence, which included Dr. Liem's recommendation against surgery.[7]   The ALJ's assessment was based only on the information she had before her decision, and the propriety of her conclusions must be viewed in that light.

In sum, the ALJ acted in accordance with her responsibility to determine whether the objective medical evidence supported Lahnum's subjective allegations. In doing so, she gave specific, legitimate reasons for affording greater weight to particular opinions over others, and did not substitute her opinion for that of the medical experts.   The Court therefore rejects the first basis of Lahnum's appeal.

---

[7]Although this evidence was not before the ALJ, the Court has considered it, and at best, his subsequent surgery tends to show that his back pain was a treatable condition rather than totally disabling.   *See Albery v. Colvin*, 2014 WL 956135, at *12 (D. Ariz. Mar. 12, 2014) ("Evidence that treatment can effectively control an impairment may be a clear and convincing reason to find a claimant less credible.") (citing 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv)).   In any event, because the ALJ did not rely on whether Lahnum's back pain was a treatable condition in making her credibility determination, the Court acknowledges that it likewise may not rely upon it here.   *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 n.2 (9th Cir. 2008) ("We are constrained to review the reasons the ALJ asserts.") (citation omitted).

## II.   **The ALJ Properly Assessed Claimant's Credibility**

The remaining issue is whether the ALJ explained with sufficient clarity why she questioned Lahnum's credibility in determining his RFC.   The ALJ found that Lahnum's "allegations concerning the intensity, persistence and limiting effect of his symptoms are less than fully credible."   AR 19; *see also* AR 20 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however the claimant's . . . statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC] assessment.").   Lahnum contends that the ALJ's reasons for discounting his credibility based upon certain daily activities – including kayaking, camping, side-jobs and music activities – are not supported by substantial evidence.

When weighing the credibility of a claimant's testimony, the ALJ's duties are as follows:

> It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity. 20 C.F.R. § 404.1545.   However, absent affirmative evidence of malingering, an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons.   *Smolen*, 80 F.3d at 1283-84.   "The ALJ must specifically identify what testimony is credible and what testimony undermines the

claimant's complaints."   *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).   The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it.   *See Smolen*, 80 F.3d at 1285.   In evaluating the credibility of claimant's testimony, the ALJ must consider the factors set out in Social Security Ruling ("SSR") 95-5p.   The factors in SSR 95-5p include daily activities and the adjudicator's personal observations of the claimant.   *See* Soc. Sec. Rul. 95-5p, 1995 WL 670415, at *1.   With respect to daily activities, this court has held that if a claimant "is able to spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations."   *Morgan*, 169 F.3d at 600.

*Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).   *See also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors.").

The ALJ first concluded that the "objective medical evidence does not support the claimant's subjective allegations."   AR 19; *see also* AR 21-22.   She acknowledged the impact of his L1 fracture, then correctly observed that uncontroverted physical examinations showed normal muscle strength, a normal gait, and no evidence of muscle atrophy.   The record also evidenced the absence of any physical therapy, chiropractic treatment, or acupuncture, as well as the absence of surgical intervention.   AR 19.   The ALJ found Lahnum's lack of certain types of

treatment to be inconsistent with his allegations of disabling symptoms.[8]   The ALJ

provided specific, clear and convincing reasons for discounting Lahnum's testimony

regarding the intensity, persistence and limiting effects of his symptoms.   *See*

*Chaudhry v. Astrue*, 688 F.3d 661, 670-671 (9th Cir. 2012) (holding that the ALJ

properly relied on medical evidence undermining claimant's subjective assessment

of limitations).

The ALJ also observed that Lahnum answered questions without difficulty at

the hearing, processing questions with aplomb and responding without delay.   His

subjective complaints of decreased concentration and impaired memory recall were

therefore not observed, nor were they supported by the objective medical findings,

including treatment notes indicating that his mental impairments were controlled

with medication and therapy.   AR 20.   The medical evidence and the ALJ's

observations, in other words, were plainly inconsistent with Lahnum's subjective

complaints of disabling symptoms regarding his mental limitations.   *See Carmickle*

*v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction

---

[8]To the extent that the ALJ arguably erred in relying on Lahnum's failure to seek treatment from a specialist when he did not have health insurance, *see Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), or failed to specifically note his follow-up treatment immediately after the accident, *see* AR 448, any error was harmless in light of the ALJs other findings that provide substantial evidence for the adverse credibility determination.   *Sherman v. Colvin*, 582 F. App'x 745, 748 (9th Cir. 2014) (citing *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Again, the ALJ properly weighed and assessed medical evidence and her personal observations in considering Lahnum's credibility on this issue.

The ALJ also adequately identified the particular testimony that was not credible and explained how it undermined Lahnum's subjective complaints. *See* AR 18-20. With respect to Lahnum's description of daily activities, the ALJ noted that several of his then-recent undertakings were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." AR 20. She particularly noted his kayaking and camping activities in December 2012, his attempts to perform side jobs in January 2013, and his ride-along in a fishing tournament the weekend before the hearing. The ALJ found that Lahnum's "ability to participate in such activities diminishes the credibility of the claimant's allegations of functional limitations." AR 20.

Lahnum argues that it was error to rely on his kayaking and camping activities because they preceded the date of his disability on January 17, 2013. The ALJ took this specific timing into account, however, noting that he went "kayaking and camping one month prior *to the amended onset date*." AR 20 (emphasis added). This timing is relevant to her credibility determination because he initially claimed disabled status as of September 15, 2011 – that is, he was able to go camping and

19

kayaking after he originally claimed to have become disabled.   *See* AR 67, 70. The ALJ's consideration of these pre-disability activities is therefore germane to her credibility analysis and sufficiently explained in the decision.   Likewise, the ALJ's reference to Lahnum's participation in a boating tournament the weekend before his hearing is supported by Lahnum's testimony and was not error.   He explained that he was on the boat with his girlfriend for a weekend tournament, but did not fish himself, and that he experienced difficulties with his back while on the boat.   *See* AR 48-49.   This testimony is pertinent to assessing Lahnum's credibility regarding his complaints of pain and a disabling condition.

The Court finds that all of the ALJ's findings identified by Lahnum are properly supported by the record and sufficiently detailed to ensure that his subjective testimony was not discredited by the ALJ in error.   *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying 'what testimony is not credible and what evidence undermines the claimant's complaints.'") (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). Accordingly, as with the first of Lahnum's two issues, the Court finds that the ALJ did not err.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the Commissioner's final decision applied the correct legal standards, was supported by substantial evidence, and is in accordance with the law.   Accordingly, the Court affirms the ALJ's December 29, 2014 decision.   The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED: July 29, 2016 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

<u>Lahnum v. Colvin;</u> CV 15-336 DKW-RLP; **ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE**